
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**Woodrow Flemming,**

                              **Plaintiff,**

                      **-v-**                                       **9:11-CV-1119 (NAM/RFT)**

**William H. Chase, SGT, Upstate Correctional Facility, and
Neal J. Lavigne, CO, Upstate Correctional Facility,**

                              **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Boies, Schiller & Flexner LLP
Adam R. Shaw, Esq., of counsel
John F. Dew, Esq., of counsel
30 South Pearl Street
Albany, New York 12207
Attorney for Plaintiff

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Brian J. O'Donnell, Esq., AUSA
Laura A. Sprague, Esq., AUSA
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

On December 19, 2013, the Court held an evidentiary hearing on the issue of whether plaintiff, an inmate in the custody of New York State Department of Corrections and Community Supervision ("DOCCS"), properly exhausted his administrative remedies regarding his sole remaining claims in this case, and, if not, whether his failure to exhaust should be excused. As set forth below, the Court holds that administrative remedies were available to plaintiff, that he failed

to exhaust them, and that there is no basis to excuse that failure. The case is dismissed.

## APPLICABLE LAW

Under the Prison Litigation Reform Act ("PLRA"), "No action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U .S.C. § 1997e(a). Failure to exhaust is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Where defendants have come forward with proof of failure to exhaust administrative remedies,

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, ... or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004) (citations and quotation marks omitted).

Generally, the inmate grievance program involves a three-step process: first, filing of the grievance with the Inmate Grievance Review Committee ("IGRC") within 21 days of the alleged occurrence; second, appeal of an unfavorable decision to the superintendent within seven days of an unfavorable decision; and third, appeal of an unfavorable decision to the Central Office

Review Committee ("CORC") within seven days. 7 N.Y.C.R.R. § 701.5. There is an expedited process for "harassment grievances," that is, "those grievances that allege employee misconduct meant to annoy, intimidate or harm an inmate." 7 NYCRR §701.2(e). Such grievances are investigated by the Superintendent's Office, 7 NYCRR §701.8(d), which is required to render a decision within 25 days. 7 NYCRR §701.8(f). An unfavorable superintendent's response may be appealed to CORC within seven days of receipt of the response. 7 NYCRR §701.8(h). Further, if the superintendent fails to respond within 25 days, the grievant may appeal to CORC. 7 NYCRR §701.8(g). Any failure of the IGRC or superintendent to respond timely to a grievance or appeal must be appealed to the next level, including CORC, to complete the grievance process. *See Goodson v. Silver*, 2012 WL 4449937, *4 (N.D.N.Y. Sept. 25, 2012).

## THE HEARING

On October 4, 2012, this Court issued a Memorandum-Decision and Order dismissing under 28 U.S.C. § 1915A(b) all claims and defendants in this action except plaintiff's claims in the seventh cause of action against Sgt. William H. Lavigne and Corrections Officer Neal J. Chase. Plaintiff's remaining claims are that defendants assaulted him on a bus on July 8, 2010 and that the assault was in retaliation for his threat to report their misconduct. Defendants contend that the claims must be dismissed because plaintiff failed to exhaust his administrative remedies, and there is no basis to excuse that failure. Specifically, defendants contend that there was an administrative process in place at Upstate Correctional Facility ("Upstate") where plaintiff was housed at all relevant times; that the process was available to plaintiff; and that he failed to exhaust that process because he failed to file a grievance regarding the alleged July 8, 2010 assault ("assault grievance") and otherwise failed to pursue the administrative process. Plaintiff

-3-

contends that he did file the assault grievance on July 9, 2010 and that it was mishandled by defendants. Plaintiff further contends that he reasonably believed he had properly exhausted his remedies. The Court held an evidentiary hearing on the issues on December 19, 2013.

At the beginning of the hearing, plaintiff put on the record the stipulation "that the State of New York has a process in place and we agreed that we knew about the process." Plaintiff further stipulated, during the course of the testimony, that a complaint to the superintendent of the facility would not constitute a grievance. Plaintiff's counsel clarified: "We've made no argument that his complaint [to the superintendent] should ... count here for the grievance. Our argument is that he turned in a grievance [to the IGRC], as he was supposed to."

Defendants' first witness was Scott Woodward, grievance supervisor at Upstate for the past two years. Mr. Woodward testified as follows. His duties are to oversee the grievance program. Paper records of grievances are maintained by the grievance program for 5 years, and computer records document grievances received by the program from 1999 through the present. In addition to grievance records, the grievance program at Upstate maintains records of communications with inmates in a separate file under the inmate's identification number. When a grievance is received by the program, it is assigned a code to identify the grievance by type, and a number to identify the particular grievance. Mr. Woodward searched the grievance program records and found no record of a grievance filed by the plaintiff regarding an assault on July 8, 2010, no correspondence regarding the alleged July 8, 2010 assault, and no grievance of any kind filed by plaintiff on July 9, 2010.

On cross examination, Mr. Woodward acknowledged that he did not work at Upstate at the time plaintiff filed his grievance and has no personal knowledge whether plaintiff filed a

grievance in 2010. He further testified on cross examination:

> Q So, does it ever happen that a grievance gets lost when it gets filed?
> A Not that I'm aware of.
> Q Is it possible?
> A Anything's possible.
> ***
> Q Is it fair to say that my client has given you a lot of grievances?
> A Three hundred ninety in the last eight years, yes.
> Q Three hundred ninety in the last eight years?
> A Yes.
> Q And given the huge amount of paperwork that you get, given the huge amount of paperwork that my client has turned in, isn't it possible that a grievance that he submitted could be lost?
> A Not by me or anyone working in my office. I don't believe it would be.
> Q Not possible?
> A We process every piece of paper that comes across our desk.

He added that he has "never seen an example of a grievance being mishandled."

Defendants next called Karen Bellamy, director of the inmate grievance program at Upstate for the past seven years. She testified as follows. Her office maintains the records of CORC, the final appeal level in the grievance process. It is not possible to exhaust the grievance process without appealing to CORC. Ms. Bellamy reviewed CORC records and found no records relating to an appeal by plaintiff from a grievance that alleged an assault on July 8, 2010.

On cross-examination Ms. Bellamy testified that she does not work at Upstate and would not know whether plaintiff had submitted a grievance there. She did not recall whether she had searched her records for an appeal of the July 8, 2010 incident since July 2013. On redirect examination, Ms. Bellamy testified generally to the procedure and time limits for filing appeals, and indicated she would not expect to receive an appeal of a 2010 incident in 2013.

Plaintiff then took the stand. He has been in the custody of DOCCS since 2003 and has

been housed at Upstate for the past 8 years.[1]  Plaintiff testified that defendants assaulted him on July 8, 2010.  After the assault, plaintiff told a sergeant he had been assaulted.  He was then seen by Nurse Smith.  The medical report dated July 8, 2010 states: "claiming assaulted by staff"; "no injuries noted"; and no treatment provided.

Plaintiff testified that on the following day, July 9, 2010, he prepared a grievance regarding the assault and sent it to the grievance committee.  He also sent a complaint to the superintendent's office.[2]  Plaintiff introduced a memo from Lt. McClatchie to Capt. Zerniak dated July 16, 2010, stating: "I was notified by Sgt. Eddy that R.N. Smith notified him that inmate Flemming ... made allegations to her that he had been assaulted by staff on the draft bus on 7/8/10."  Lt. McClatchie stated that he interviewed plaintiff on July 14, 2010.  Although plaintiff testified that the interview was conducted in response to the assault grievance allegedly filed on July 9, 2010, it is clear from the memo that Lt. McClatchie interviewed plaintiff as a result of Nurse Smith's report to Sgt. Eddy about the assault allegations.

As for why he could not produce a copy of the grievance paperwork for the grievance in issue, plaintiff testified that it was removed from his cell on July 16, 2010 in connection with a paper deprivation order.  Plaintiff's exhibit 17, a memo by Capt. Zerniak dated July 27, 2010, states: "On 7/16/10 inmate Flemming refused staff direction to remove paper that he had hanging on the lights obstructing visibility into his cell.  A paper deprivation was authorized by Captain

---

[1] Plaintiff's incarceration is based on his plea of guilty to grand larceny in the second degree, N.Y. Penal Law Section 155.40(1), stemming from multiple charges in connection with his participation in a scheme to defraud charities that assisted individuals and businesses in lower Manhattan that were adversely affected by the September 11, 2001 attack on the World Trade Center.  *See Flemming v. New York*, 2013 WL 4831197, *4 (S.D.N.Y. Sept. 10, 2013).

[2] Plaintiff concedes that sending a complaint to the Superintendent's office does not satisfy any of the requirements of the grievance process.

Quinn.  Inmate Flemming refused to exit his cell for a cell search and it became necessary to use force to remove him from the cell and confiscate all his paper."  Captain Zerniak asserts that all legal papers were returned to plaintiff on or before July 27, 2010.  Plaintiff claims that some papers were never returned, including the assault grievance.

When asked, "as you sit here today, you have no explanation, do you, for why your grievance that you said that you sent out on July 9th of 2010 never reached the grievance office, correct?" plaintiff responded, "The only explanation I have I was told not to file and I tried to proceed, I tried to exhaust my remedies and my, my – it was held up, it was foul play, whatever you call it, somebody stopped it."  Plaintiff further testified that it was not until he received papers from the Attorney General in the context of the instant lawsuit that he discovered that his grievance had been "mishandled."  He then appealed to CORC on July 17, 2013.  On direct examination, when asked why he waited so long to submit that appeal, he responded: "Because I was a little bit confused – I thought my grievance, I thought my grievance and everything had been – was being investigated properly. I did not know it was being mishandled.  So I then try to correct it by filing this appeal."  On cross examination, plaintiff acknowledged that he knew that, if he didn't receive a response regarding a grievance within the appropriate time period, he was nevertheless required to appeal in order to complete the exhaustion process.

The documentary evidence (defendants' exhibit D4) includes a record of plaintiff's grievance 43250-10, dated July 15, 2010 and received by IGRC on July 23, 2010.   The grievance claims that on July 2, 2010 plaintiff fell down bus steps and was injured.  The relief he sought was that he be provided with all medical records of the injuries sustained on that date, all videos, and all officers involved.  The IGRC decision denying the request was dated July 28, 2010, the

superintendent's determination was dated August 20, 2010, and plaintiff's CORC appeal was dated September 8, 2010.

On recross examination, plaintiff testified:

> Q If you thought your grievance was being handled properly, what did you think the result was?
> A I thought it was being handled properly.
> ***
> Q You thought it was being investigated and that a disposition was made, right?
> A Yes. Right.
> Q Well, what was the disposition?
> A Well, one thing about it is, when I first got my grievance –
> Q No, no. That's not the question. The question is: What was the disposition? If you thought it was being properly handled, what was the disposition?
> A I thought my grievance was consolidated with the 250 [*i.e.*, grievance 43250 claiming that on July 2, 2010 he fell down bus steps and was injured] and that's what I thought, when I get the – I find out it hadn't been consolidated with. That's what I thought, I thought it was consolidated with my slip and fall grievance because I did not make no slip and fall complaint on the 8th.
> Q You thought it was denied?
> A When I –
> Q You thought your grievance was denied, is that what you're saying?
> A Yes, well, you said denied –
> Q No, I'm saying: What was the disposition? ... If you thought your grievance was being properly handled, even if you thought it was under some other number, what was the disposition?
> A Denied. Denied on the 250. On USG53250 [*sic*] on the slip and fall because on July the 8th –
> Q Wait a minute, sir. There's no question pending. I'm going to show you what was previously marked as Defendant's D4 and it's sitting in front of you in that binder, do you see it?
> A Yes, I do.
> Q And that's a disposition on grievance 43250, correct?
> A Yes.
> Q And that's the one you were just referring to?
> A Yes.
> Q And that was affirmed or it was denied, the denial of your grievance was affirmed?
> A Denied, denied.
> Q And what date is on that document?

>A File 7/23/2010.
>Q And there's no reference to an assault on July 8th of 2010 in that document, is there?
>A No, there's not.

Defendants then recalled Scott Woodward, who testified as follows:

>Q Mr. Woodward, just briefly, does the inmate grievance office from time to time consolidate grievances?
>A Yes.
>Q If grievances are consolidated ... is there any record that's kept regarding that consolidation?
>A Yes.
>Q What record is kept that those have been consolidated?
>A Well, the grievances are, first of all, consolidated within the file.
>Q Okay.
>A And then they are logged as consolidated grievances. For instance, if it's three items dated on three separate dates, they are noted as three separate pieces of paper within that grievance.
>Q Is it the practice of the inmate grievance office to dispose of any of the original grievances that made up that consolidated grievance?
>A No.
>Q Is there, when grievances are consolidated, is there any manipulation of the grievances that were submitted by the inmate?
>A No.
>Q What does it mean to consolidate grievances?
>A We will get a grievance on the same or distinctly similar issue and we will make the determination that this grievance can be addressed as one grievance issue with it, yeah.
>Q So, if I was an inmate ... let's say I made a grievance as an inmate that my food was given to me cold on three separate days by the same person, would that be something that would potentially be consolidated?
>A Yes.
>Q If I did that, would you – is there any portion of those three grievances that you would not address in the inmate grievance office?
>A No.
>Q Okay.
>A We would address every aspect of that grievance.
>Q And you would have some record that that was consolidated?
>A Yes.
>Q And you would have some record of the original grievances that made up that consolidated record?
>A Yes.
>Q And do you have any records whatsoever that suggest that any of Mr.

-9-

> Flemming's grievances in July of 2010 were consolidated?
> A No.
> Q I'm going to show you what's been admitted as Exhibit D4 and ask if you can identify what's contained within that exhibit.
> A Yes, there is grievance Upstate, the entire grievance file for Upstate 43250-10.
> Q And when you say grievance packet, that should include all documents related to any grievances under that number?
> A Correct.
> Q If you consolidated two grievances under that number, would that be contained within that file?
> A Yes, they would.
> Q Does that document show any record of any grievances being consolidated under that number?
> A No.
> Q Does that grievance packet contain any records relating to a grievance alleging an assault on July 8th of 2010?
> A No.

## DISCUSSION

As set forth above, failure to exhaust is an affirmative defense. *See Jones*, 549 U.S. at 216. Where a defendant demonstrates that a plaintiff has failed to exhaust, the Court engages in a three-part inquiry to determine whether the failure should be excused: (1) whether administrative remedies were in fact available to the inmate; (2) whether defendants have forfeited or should be estopped from asserting the affirmative defense of non-exhaustion; and (3) whether special circumstances justify the inmate's failure to comply. *See Hemphill*, 380 F.3d at 686.

Plaintiff concedes that an administrative process existed and that he knew about it. As discussed below, the evidence amply meets defendants' burden of proving that plaintiff failed to exhaust his administrative remedies regarding the assault grievance. Further, plaintiff has failed to demonstrate that the required remedies were unavailable to him, that defendants forfeited or should be estopped from asserting the defense, or that special circumstances existed such as would excuse plaintiff's failure to exhaust.

-10-

Plaintiff's primary argument is that defendants failed to carry their burden of demonstrating that plaintiff failed to exhaust the administrative process. Plaintiff contends that the testimony of Mr. Woodward and Ms. Bellamy is insufficient to demonstrate that plaintiff failed to exhaust his administrative remedies regarding the alleged July 8, 2010 assault. The Court disagrees. Mr. Woodward and Ms. Bellamy are clearly competent to testify regarding the applicable procedures, and their testimony that they searched the records and found no grievance or appeal is admissible as evidence of the absence of a record under Federal Rules of Evidence 803(7). In addition, cross-examination of Mr. Woodward disclosed no basis to find that grievances generally were likely to be lost or mishandled. Having heard the testimony and observed the demeanor of Mr. Woodward and Ms. Bellamy on both direct and cross examination, and having reviewed the documentary evidence herein, the Court credits their testimony as proof that DOCCS records contain no grievance or appeal regarding the alleged July 8, 2010 assault.

Plaintiff did not counter this evidence with credible proof that he actually filed a grievance regarding the alleged July 8, 2010 assault. Although plaintiff testified that he filed such a grievance, the Court finds his testimony not credible and concludes that plaintiff did not file the grievance in issue. The lack of credibility of other aspects of plaintiff's testimony, as discussed below, undermines the credibility of plaintiff's testimony that he filed the assault grievance, and the Court rejects it in favor of Mr. Woodward's testimony and the documentary evidence that the assault grievance was never filed.

In addition, the record establishes that plaintiff did not file an appeal regarding the alleged grievance. The Court accepts Ms. Bellamy's testimony and the documentary evidence on this issue. Plaintiff clearly knew that even if he received no response to the grievance, he was

-11-

nevertheless required to file an appeal within a specified time, yet he did not do so. Thus, plaintiff's failure to file an appeal lends additional support to the finding that plaintiff did not file the grievance. Moreover, even if plaintiff did file the grievance, his failure to appeal in itself constitutes failure to exhaust administrative remedies.

Having found that plaintiff failed to exhaust the administrative process, the Court turns to consider whether any of the *Hemphill* exceptions to the exhaustion requirement apply here. First, there is no record support for a finding that the administrative remedies were not available to plaintiff. Plaintiff has a thorough knowledge of the grievance procedure; his stipulation to this effect is bolstered by the documentary evidence, plaintiff's own testimony, and Mr. Woodward's testimony that plaintiff had filed 390 grievances in the previous eight years. There is no evidence that threats or other misconduct by prison authorities rendered the remedies unavailable. Indeed, DOCCS records show that during July and August 2010, plaintiff filed five grievances (43239-10; 43250-10; 43280-10; 43404-10; and 43405-10). Also, plaintiff stated that although Lts. McClatchie and Zerniak encouraged him to "drop" his assault grievance, he refused to do so. Plaintiff does not claim he was somehow prevented from filing the assault grievance; to the contrary, he claims he did file it. Nor does he claim he was somehow prevented from filing an appeal regarding the assault grievance; rather, as discussed below, he claims he believed that he did file such an appeal in conjunction with his appeal of grievance 43250-10.

Regarding the question of whether defendants forfeited or should be estopped from asserting the affirmative defense of failure to exhaust, the Court first notes that defendants did not waive or otherwise forfeit the defense. Nor is there any basis to find that defendants are equitably estopped from relying on the defense. *See generally Ziemba v. Wezner*, 366 F.3d 161, 163-64 (2d

Cir. 2004). As noted, it is plaintiff's position that he did file the grievance; thus, he cannot also claim that misconduct on defendants' part prevented him from doing so. With respect to the paper deprivation order, there is no evidence that defendants Sgt. Chase or C.O. Lavigne were in any way responsible for this order. Also, the records demonstrate the existence of grounds for the order entirely independent of any motive to prevent plaintiff from pursuing the purported assault grievance, and plaintiff did not refute the existence of such grounds. In any event, the order, which was issued on July 16, 2010, could not have interfered with plaintiff's alleged filing of the assault grievance on July 9, 2010. Plaintiff does not appear to claim that the paper deprivation order prevented him from filing an appeal regarding the assault grievance; to the contrary, he claims that he believed he did file an appeal of the assault grievance (in conjunction with his appeal from grievance 43250-10). There is no basis to find that defendants' non-exhaustion defense is barred by equitable estoppel.

Next, the Court considers whether plaintiff has demonstrated special circumstances justifying his failure to exhaust. *See Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004). The *Giano* court found special circumstances in the plaintiff's reliance on a reasonable interpretation of prison grievance regulations. *Id*. at 678. Here, plaintiff argues that he reasonably believed he had exhausted his remedies regarding the assault grievance. The Court assumes that there may exist situations in which an inmate's reasonable belief that he had exhausted his remedies would constitute a special circumstance excusing non-exhaustion. This is not such a situation.

The Court has already found that plaintiff did not file the assault grievance. The Court now finds that plaintiff has not shown he had a reasonable belief that he did file the assault grievance such as would amount to a special circumstance. That plaintiff may have forgotten or

-13-

been mistaken about a grievance does not amount to a reasonable belief that he filed it, nor does it support a finding of a special circumstance. The Court does not credit plaintiff's position that Lt. McClatchie's interview of him on July 14, 2010 supported his belief that the grievance had in fact been filed. Obviously, interviews can be conducted in response to events other than the filing of a grievance. Indeed, Lt. McClatchie's statement that he and Sgt. Eddy investigated the alleged assault in response to a report from Nurse Smith is consistent with plaintiff's testimony that he told Nurse Smith he had been assaulted by staff. And even accepting that the interview led plaintiff to believe his grievance had been filed, plaintiff knew that an interview was not a substitute for a determination on his grievance, and that he had to file an appeal regardless of whether he received a disposition.

It is undisputed that there is no record of a disposition on the alleged assault grievance, and no record of any appeal (other than the appeal filed in 2013 after this lawsuit was filed). Plaintiff stated he believed that the assault grievance had been consolidated with grievance 43250-10, that both grievances had been denied in the context of the denial of grievance 43250-10, and that his appeals from the denial of grievance 43250-10 constituted appeals from the denial of both grievances. The Court rejects this testimony. There is no evidence that consolidation occurred; the Court credits Mr. Woodward's testimony on this issue, which is fully supported by the documentary evidence. There is nothing in the paperwork regarding grievance 43250-10 upon which plaintiff could have based a reasonable belief that the two were consolidated, nor does he give a plausible explanation for why he believed this. Moreover, there is nothing in plaintiff's own written appeals to the superintendent and to CORC regarding grievance 43250-10 that even suggests that plaintiff believed he was appealing from anything other than his request

for records relating to the alleged slip and fall on July 2, 2010. Plaintiff's testimony in this regard is wholly implausible, and, indeed, its implausibility undermines his credibility on other issues. Plaintiff has adduced no evidence of special circumstances such as would excuse his failure to exhaust.

To summarize, having heard the testimony and observed the witness' demeanor on both direct and cross examination, and having reviewed the documentary evidence herein, the Court finds as follows. An administrative process existed at Upstate, and plaintiff thoroughly understood it. Plaintiff did not file a grievance regarding the alleged July 8, 2010 assault on July 9, 2010 or any other date, nor did he file any appeal regarding the alleged July 8, 2010 assault until July 17, 2013, after he brought this action. The procedure was fully available to plaintiff, who was not prevented from using it by threats or on other any other ground. Defendants preserved the defense of non-exhaustion. Plaintiff's failure to exhaust his administrative remedies is not attributable to misconduct or other action by defendants, nor is there any other basis for equitable estoppel. Plaintiff had no reasonable belief that he had exhausted his remedies regarding the alleged July 8, 2010 assault. There is no basis to find special circumstances, nor is there any other ground for excusing plaintiff's failure to exhaust.

The Court concludes that plaintiff failed to exhaust his administrative remedies regarding the alleged July 8, 2010 assault; that the administrative remedies were available to plaintiff; that defendants have not forfeited the affirmative defense of non-exhaustion; that defendants are not equitably estopped from asserting the defense; that no special circumstances existed such as would excuse plaintiff's failure to exhaust; and that there is no other basis to excuse plaintiff's failure to exhaust. Accordingly, the case is dismissed under the PLRA's exhaustion requirement,

42 U.S.C. § 1997e(a).

Any complaint plaintiff may have regarding his current conditions of confinement are not properly before the Court in this action. Accordingly, the Court takes no action regarding his letter dated February 24, 2014 (Dkt. No. 104).

## CONCLUSION

It is therefore

ORDERED that the action is dismissed with prejudice.

IT IS SO ORDERED.

Date: March 6, 2014
      Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge